**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTICT OF MISSISSIPPI**
**OXFORD DIVISION**

CASE No. ___3:12CV-98-SA- SAA___

**E. DRAKE**

**Plaintiff**

VS

**BARACK OBAMA, BUREAU OF ALCOHOL, TOBACCO, FIREARMS, FEDERAL BUREAU OF INVESTIGATION, AND THE DEPARTMENT OF JUSTICE**

**Defendant**

**ORIGINAL COMPLAINT AND**
**REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Eric Drake, hereinafter referred to as "Plaintiff," and files this original petition and requests for declaratory and injunctive relief. He complains of Barack Obama, the President of United States. President Obama shall be referred to herein as "Defendant," or "Obama" and the Bureau of Alcohol, Tobacco, and Firearms (BATF), Federal Bureau of Investigation (FBI), and Department of Justice (DOJ) for such cause of action would show as follows:

**APPLICATION FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff, Eric Drake file this complaint and application for declaratory and injunctive relief and monetary damages against defendants BATF, FBI, and DOJ for violations of his rights to bear arms. Plaintiff respectfully requests a "nonstatutory review" of the President Barack Obama behavior and or responses to the Plaintiffs allegations made herein and claims asserted.

**I. SUMMARY OF ALLEGATIONS**

1.      This litigation concerns the violation of the Plaintiffs rights as a citizen of this nation and the failure of four presidents, including the defendant Obama to investigate the Plaintiffs complaint. The primary duty of the president of the United States is to make sure that all U.S. laws are carried out and the federal government is run effectively. U.S. Secret Service agents and one ATF agent conspired to commit felonies with others against the Plaintiff to force

the Plaintiff to plead guilty to a felony crime that he did not commit. Plaintiff has filed complaints with George Herbert Walker Bush, George Walker Bush, William Clinton, (each of these previous presidents failed to effectively investigate the Plaintiffs claims against federal agents of serious felony crimes). Unlike any other presidents, the Plaintiff forwarded evidence of the crime to the defendant, Obama. Yet, he also failed to investigate the Plaintiffs compliant against federal agents who in all probability committed felony crimes against him. Plaintiff has written both Barack Obama and Michelle Obama and he has never had any type of response from either of them from his letters. Though, the Plaintiff did get a response from both Bushes, and Clinton.

2.      Plaintiff is fully aware that the president is guarded by federal agents and that would in all probably cause a problem in the defendant investigating these serious crimes committed by U.S. Secret Service agents. But the president have a job to do, and part of that job is to make sure that the Plaintiff is protected, even from criminal activities of federal agents. Unfortunately, the defendant Obama has failed the Plaintiff just as the other presidents did but the defendant has evidence that could be used to prove that the Plaintiff was wrongfully convicted. This evidence attached as Exhibit "1" is proof of a conspiracy between federal agents and a citizen by name of Porter III.

3.      Having evidence, [even though its 20 plus years old] that federal agents had all probability been committed against a citizen of this nation should be taken seriously. But it has not been. Most recently the world was alerted to U.S. Secret Service agents who were engaged with prostitutes while on duty to protect the defendant outside of the United States. In the Plaintiffs case, it wasn't merely engaging in behavior that is unbecoming; these acts perpetrated against the Plaintiff in all probability by federal agents were intentional federal felony crimes that were intended to harm the Plaintiff. These crimes were:

        a). Count one: U.S. agents for the federal government conspired to file a

            false indictment against the Plaintiff.

b). Count two: U.S. agents for the federal government manufactured a false witness against the Plaintiff.

c). Count three: U.S. agents for the federal government collaborated and filed false statements of fact against the Plaintiff.

d). Count four: U.S. agents for the federal government manufactured and filed false evidence against the Plaintiff.

e). Count five: U.S. agents for the federal government filed false and misleading reports against the Plaintiff.

f). Count six: U.S. agents for the federal government illegally arrested the Plaintiff.

g). Count seven: U.S. agents for the federal government violated the Plaintiffs fourth amendment rights.

h). Count eight: U.S. agents for the federal government obstructed justice.

i). Count nine: U.S. agents for the federal government committed false swearing.

4.     In addition to the corrupt federal agents who committed crimes against the Plaintiff, the federal judges violated the Plaintiffs rights repeatedly to assure a conviction for these agents and the U.S. attorneys' office. The judges in Plaintiffs case violated the Plaintiffs constitutional and civil rights in the following ways:

a). The court refused bail to the Plaintiff, which is a constitutional violation, without just cause or reason;

b). Then the court required an excessive bail, in violation of Plaintiff constitutional rights;

c). Upon appointing the Plaintiff an attorney, the court unjustly required that Plaintiff pay this attorney by liquidating his own personal property;

d). The court wrongfully refused to allow Plaintiff to dismiss his court-appointed attorney once Plaintiff had hired another attorney. The court forced Plaintiff to keep ineffective counsel;

e). The court refused to investigate the serious crimes committed by federal agents and the U.S. attorney's office;

f). The court required Plaintiff to pay for several unwarranted expenses and fines in an effort to make Plaintiff waste as much of my money as possible. Plaintiff was forced to pay $2,500.00 into the court's victim fund before his release, though Plaintiff was the victim.

5.      The defendant oversees the United States government. And representatives of the U.S. government violated the rights of the Plaintiff by: 1). Disallowing the Plaintiff to terminate the attorney appointed to him when he had hired another attorney ready to try the case [the Virginia court denied the Plaintiff his right to terminate ineffective counsel], 2). Manufacturing witnesses and evidence against the Plaintiff [a witness, Porter II claimed that he saw the false document when the Plaintiff when for his billfold]. The problem was that the Plaintiff didn't carry a billfold. The government claimed that they had other evidence that was non-existence or was manufactured. The government also required a cash bond for bail although the Plaintiff had adequate property to post as bail. The government filed an indictment against the Plaintiff of six counts, but wanted the Plaintiff to plead guilty to an "information" because they were apparently afraid to use the manufactured evidence for trial.

6.      Plaintiff pled guilty because he could not get bail, an American citizen with no criminal records could not get bail—and once bail was allowed the bail was excessive, which was like not allowing bail at all. This was another violation of Plaintiffs constitutional rights and his health was depleting in jail. Upon release, the Plaintiff focused on obtaining a pardon. Plaintiff

was allowed to live in Louisiana throughout his probation of two (2) years because he grew up in that state and he had family support there. The Plaintiff applied for a pardon through the governor of the State of Louisiana. After nearly eighteen months, the governor, Edwin Edwards granted the Plaintiff a full pardon, including his firearms rights. But the U.S. government has objected to that pardon claiming that the Plaintiff must obtain a Presidential Pardon—the Plaintiff disagrees. The Plaintiff pled guilty to USC 18 § 1028(a)(1). Under 1028(a)(1) the Plaintiffs rights are not subject to USC 18 §922(g)(1) because the crime that the Plaintiff was forced to plea to was an anti-trust violation, and deceptive violation. False United States identification cards or documents qualify under 921(a)(20)(A), because the cards inherently have an impact on the public interest, consumers and businesses.

7.     The Plaintiff argues that the president of the United States job is to protect the citizens of this nation, and enforce the laws of the land. Four presidents have failed the Plaintiff as a citizen of this nation to investigate serious criminal acts that were carried out with intentions to harm the Plaintiff just because of his race—and the fact that these federal agents knew that their leaders, including the president of this nation, would never hold them responsible for their actions, not for a "Colored" person. Plaintiff was forced to plea guilty which removed his rights as a natural born citizen of this nation, because of racism of federal agents and judges.

## II. JURISDICTION

8.     This Court has jurisdiction over this subject matter of this action because it ask a federal questions: does the president of the United States job entail enforcing the laws of the land to the extent of investigating criminal actions committed by federal agents to harm citizens. Does a nonwhite citizen have the same rights to bail, firearms, and other constitutional and civil rights as white citizens? Does the president of the United States have a duty to investigate any crimes committed by government agents regardless of how long ago the crime was committed? Did the

defendant fail to carryout his duties when the Plaintiff forwarded tangible evidence of a serious felony federal crime to him. Plaintiff plead guilty to, USC § 1028(a)(1) falls under the guide lines of an exception under USC § 921(a)(20)(A) relating to crimes that are similar to anti-trust crimes, and unfair, deceptive trade practices. Can a state's governor's pardon act as a relief of disabilities for a federal felon in possession of firearms if the pardon gives the felon the right to possess, ship, receive, and own firearms. Plaintiff invokes this Court's jurisdiction of this action also under 42 U.S.C. §1983; §1982, and 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States. In addition Plaintiff pleas 18 USC, Section 242, 241 and 28 U.S.C. 1491.

### III. SERVICE OF PROCESS OF DEFENDANTS

9.     Defendant Barack Obama can be served at the White House, 600 Pennsylvania Avenue, North West, Washington, DC 20500. FBI, BATF, and DOJ can be served through the U.S. attorney's office, Northern District of Mississippi: 900 Jefferson Avenue, Oxford, MS 38655-3632.

### IV. FACTUAL BACKGROUND

10.     On or about May 30, 1990, the Plaintiff was arrested by U.S. Secret Service agents for allegedly misuse of a social security number. But after an indictment of five (5) counts which would have been difficult to impossible for the government to prove their case—the government proposed a plea agreement to release the Plaintiff from the atrocious living conditions in the Virginia Beach jail. The Plaintiff had relocated from Texas to Virginia Beach, Virginia to obtain his Masters of Divinity degree at Regent University. The Plaintiff has been in the ministry for over 30 years. After his arrest and intense background check the government found no criminal record, not even a parking ticket or a misdemeanor crime of any kind associated with the Plaintiff. Rather than release the Plaintiff federal agents involved in the Plaintiffs case manufactured evidence and witnesses against him apparently to force the Plaintiff to plea guilty. The Plaintiff had been in the firearm industry and was an advisor to many police departments regarding police equipment, specializing in police and military small arms and equipment. Plaintiff had a collection of firearms which the BATF checked three times with the gun dealers that the Plaintiff purchased the weapons, and none of the firearms were illegal in any manner. But rather than release the Plaintiff federal agents manufactured evidence and witnesses against the Plaintiff.

11.     The conditions of the jail, coupled with violations of the Plaintiffs rights of bail and other violations led to a plea because the Plaintiffs health was depleting. What the US Attorneys Office desired the Plaintiff to plea to: USC 18 § 1028(a)(1) under the pretense of how the government alleged the Plaintiff used false identification cards (claiming to be an FBI Agent) which the government has never produced any such documents because they never existed—is a white collar crime that would fall under an exception to USC 18 §922(g)(1).

12.     It has been over 20 years since that horrible incident occurred when the Plaintiff was arrested in 1990. Plaintiff has not been found guilty of any other felonies, or misdemeanor crimes, not even a traffic violation, since 1990. Plaintiff believed in this nation, its government, its judicial courts, and the fairness of our world leaders and the Congress before this horrible incident occurred, but not any more. Plaintiff understands the cruelty of the judicial system and government agents.

## V.  LOUISIANA CONSTITUTIONAL LAW

13.     Under the Louisiana Constitution of 1974, gun ownership is one of the basic rights of citizenship. Article 1, Sec. 11 of the Louisiana Constitution of 1974 provides that the citizen's right to keep and bear arms "shall not be abridged."

14.     There are two primary considerations in determining whether a previously convicted felon in Louisiana is subject to one of the limitations mentioned above. The first is the type of felony for which they were convicted; the second is determining whether the person has completed their sentence, probation, or parole and or whether they have had their civil rights restored under some sort of pardon.

15.     In many states, for a felon to have his civil rights automatically restored is not necessarily an approval to possess firearms and ammunition. Convicted felons civil rights are not substantially restored under some state laws. Pursuant to *U.S. v Hassan El, C.A.4 (Md), 1993, 5F.3d 726,* there must be more than a de minims quantity of civil rights restored.

16. In U.S. v Butler, Defendant's prior conviction could be used as predicate offense for charging Defendant as felon in possession of firearm even though Defendant had completed his sentence prior to date that he allegedly was in possession of firearm, and Defendant right to vote and hold public office had been restored or substantially restored, Defendant's right to sit on jury was not fully or even substantially restored.

17. The law concerning felons and firearms clearly set forth that there need to be a substantially and fully restoration of civil rights to prevent a charge of felon in possession of firearm. U.S. v Edwards, U.S. v. Bell and several other cases sighted that Defendant whose civil rights have been substantially restored cannot be charged with felon in possession (18 U.S.C. § 921(a)(20)(A).

18. In determining whether Defendant is "convicted felon" prohibited by federal law from possessing firearms, court must first determine whether Defendant's civil rights to vote, to seek and hold public office, and to serve on jury have been restored and if so, whether state has expressly limited defendant's firearms privileges; if civil right have not been restored, or if there is any limitation on possess of firearms because of his conviction, he is subject to federal firearms disabilities, *U.S. v White, Md. Tenn. 1992, 808 F.Supp.586.* The Plaintiff received a pardon by the governor of Louisiana, which clearly sates that the Plaintiff has had his full right of citizenship restored: including the right to own, possess, receive, ship, and transport firearms, and remission of all forfeitures resulting form such conviction. The Plaintiff received a "Gold Seal" Pardon by the governor of Louisiana, the Honorable Edwin Edwards. Where convicted person receives full executive pardon by governor upon recommendation of Board of Pardons ("Gold Seal" Pardon), he is restored to "status of innocence." State v. Riser, 30,201 (La. App. 2 Cir. 12/12/97).

"Upon favorable recommendation of the Board of Pardons," the Governor may pardon "those convicted of offenses against the state." La. Const. art. IV, § 5(E)(1); La. Rev. Stat. Ann. § 15:572(A). In holding that the phrase "offenses against the state" in art. IV, §

5 includes federal offenses, the court referred to "the historical practice of Louisiana governors to issue pardons to federal felons. See La. Atty. Gen. Op. 103, 97-878 (3/13/80), which recites the fact that Louisiana governors issued 87 pardons to persons convicted of federal felonies in the 15 years preceding 1980." 937 So. 2d at 351. Prior to the Shyne decision, the Board of Pardons had announced in 1996 and again in 2005 that it would no longer accept applications from federal offenders.

19.    "Civil Rights," for purposes of federal criminal statute providing that crime with respect to which Defendant's civil rights had been restored cannot serve as predicate offense for federal crime of possession of firearms by person convicted of a crime punishable by imprisonment for term exceeding one year, meant restoration of right to possess firearms. *U.S. v Erwin, D.D. I 11, 1989, 723 F. Supp. 1285.*

20.    Conviction in federal court of crime punishable by more than one-year imprisonment, for which all of Defendant's civil rights had been restored under Minnesota Law (State Law) upon discharge, could not serve as predicate offense for violation of statute forbidden possession of firearms by those who have been convicted of such crimes. *U.S. v Edwards, affirmed 946 F.2d 1347.*

21.    *The gubernatorial pardon that the Plaintiff received is considered the most powerful type of pardon available to a convicted felon under state law.*

22.    Unlike the automatic pardon provision found in the state constitution, the gubernatorial pardon returns a person to a "state of innocence," as if they had never committed the crime. *Gordon v. State Board of Nursing, 804 So. 2d 34, 38 (2001).* Under Louisiana law, this type of pardon restores more than just the "full rights of citizenship" discussed in Art. 1, Sec. 20 of the state constitution (such as the right to vote, work or hold public office, or possess firearms). This type of pardon restores privileges as well as rights, "such as the privilege of holding a liquor license." *State v. Adams, 355 So.2d 917, n3 922 (1978).*

23.     Pardons: As with some provisions of state law, federal law acknowledges that a person who has received a pardon restoring their civil rights, is also excluded from 922(g)'s restrictions on firearm possession, unless "such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms" 18 U.S.C. 921(a)(20)(B). The presidential pardon, much like the gubernatorial pardon the Plaintiff received, has powerful effects.

24.     The Plaintiff civil rights have been fully and substantially restored. But the Plaintiff pardon from the Governor of Louisiana makes his case an exception to §922(g)(1) because there are no cases where the defendant had his civil rights fully and substantially restored in writing and received a State Pardon giving the defendant the right to own, possess, ship, receive firearms and was found guilty by a jury under §922(g)(1). Geyler and Beecham lacked the administrative written tool of either a pardon, expungement or siding aside conviction. U.S. v Edwards affirms that convictions, which have been expunged, or set aside, or for which the person has been pardoned or had his civil rights restored, cannot be predicate offense for statute. Plaintiff has by every legal definition received the necessary elements to possess firearms. The defendant could pardon the Plaintiff, investigate the serious crimes probably committed by federal agents, but the defendant has refused to do anything—the Plaintiff received no response. Once a person is a federal felon as an ATF agent told me, "You will never get your rights back," and that statement has thus far been proven correct, whether its through legal or illegal acts by the government that the defendant is in controls.

## VI. THE PLAINTIFF HAS A LEGAL RIGHT TO BEAR FIREARMS

25.     Plaintiff re-allege and incorporate by reference the preceding paragraphs.

26.     The BATF noted the Beecham and Jones's case when the Plaintiff advised BATF of the Pardon he received from the Governor of Louisiana. Beecham and Jones were each convicted of violating 18 U.S.C. § 922(g), which makes it unlawful for a convicted felon to possess a firearm. Neither Beecham nor Jones had a full pardon from a state governor as the Plaintiff possess. Title 18 U.S.C. § 921(a)(20) qualifies the definition of "conviction": "What constitutes a conviction is determined in accordance with the law of the jurisdiction in which the proceedings were held." (choice of law clause), and any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction. The respective District Courts decided that Beecham's and Jones' prior federal convictions could not be counted because petitioners' civil rights had been restored.

27.     Plaintiff believe the laws of this nation intended that even felons to have access to all the procedures specified in the exemption clause, especially because there are many States that do not restore civil rights. The federal firearms statutes reads: "It shall be unlawful for any person who has been convicted . . . of a crime punishable by imprisonment for a term exceeding one year . . . [to possess] any firearm. . . ." 18 U.S.C. § 922(g). "What constitutes a conviction . . . shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." § 921(a)(20) (the choice of law clause). "Any conviction which has been <u>expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction,</u> this is the exemption clause. Beecham was convicted in Federal District Court in North Carolina, Jones in Federal District Court in West Virginia.

28.     Beecham's relevant prior conviction was a 1979 federal conviction in Tennessee, for violating 18 U.S.C. § 922(h). App. 11. Jones' prior convictions were two West Virginia state convictions, for breaking and entering and for forgery, and one 1971 federal conviction in Ohio for interstate transportation of a stolen automobile.

29.     Jones had gotten his civil rights restored by West Virginia, so his two West Virginia state convictions were not considered. <u>Beecham claimed his civil rights had been restored by Tennessee,</u> the State in which he had been convicted of his federal offense. <u>The question presented to the District Courts were whether these restorations of civil rights by States could remove the disabilities imposed as a result of Beecham's and Jones' federal convictions</u>. In both cases, the District Courts concluded the answer was "yes," though for different reasons: In Beecham's case, the court looked to the law of the State in which the earlier federal crime was committed (Tennessee); in Jones' case, the court looked to the law of the State in which Jones lived when he committed the § 922(g) offense (West Virginia). The Fourth Circuit reversed both rulings, reasoning that state restoration of civil rights could not undo the federal disability flowing from a federal conviction see 993 F.2d 1131 (1993) (Jones' case) and 993 F.2d 1539 (1993) (judge order in Beecham's case). We granted certiorari to resolve the conflict this decision created with United States v. Edwards, 946 F.2d 1347 (CA8 1991), and United States v. Geyler, 932 F.2d 1330 (CA9 1991). 510 U.S. 975 (1993). The question in these cases is how the choice of law clause and the exemption clause of § 921(a)(20) are related.

30.     The Fourth Circuit held, the choice of law clause applies to the exemption clause, then we must look to whether Beecham's and Jones' civil rights were restored under federal law (the law of the jurisdiction in which the earlier proceedings were held). On the other hand, if, as the Eighth and Ninth Circuits concluded, the two clauses ought to be read separately, see Geyler, supra, at 1334-1335; Edwards, supra, at 1349-1350, then we would have to come up with a special choice of law principle for the exemption clause. Throughout the statutory scheme, the inquiry is: does the person have a qualifying conviction on his record? Section 922(g) imposes a disability on people who "have been convicted." The choice of law clause defines the rule for determining what constitutes a conviction. The exemption clause says that a conviction for which

a person has had civil rights restored "shall not be considered a conviction." Asking whether a person has had civil rights restored is thus just one step in determining whether something should "be considered a conviction." By the terms of the choice of law clause, the law of the convicting jurisdiction governs this determination.

31. This interpretation is supported by the fact that the other three procedures listed in the exemption clause - pardons, expungement, and set-asides - are either always or almost always (depending on whether one considers a federal grant of habeas corpus to be a "set-aside," a question we do not now decide) done by the jurisdiction of conviction. That several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well. Dole v. Steelworkers, 494 U.S. 26, 36 (1990); Third Nat. Bank in Nashville v. Impac Limited, Inc., 432 U.S. 312, 322 (1977); Jarecki v. G. D. Searle & Co., 367 U.S. 303, 307 (1961). The fact that both clauses speak of "convictions" rebuts the Eighth and Ninth Circuits' argument that the two clauses "pertain to two entirely different sets of circumstances."

32. The question of what constitutes a conviction and "the effect of post-conviction events." Geyler, supra, at 1334-1335; see also Edwards, supra, at 1349. The exemption clause does not simply say that a person whose civil rights have been restored is exempted from § 922(g)'s firearms disqualification. It says that the person's conviction "shall not be considered a conviction." The effect of post-conviction events is therefore, under the statutory scheme, just one element of the question of what constitutes a conviction. Likewise, the presence of the choice of law clause rebuts the Eighth and Ninth Circuits' argument that the "plain, unlimited language," Edwards, supra, at 1349; see also Geyler, supra, at 1334, of the exemption clause - with its reference to "any conviction . . . for which a person has . . . had civil rights restored" (emphasis added) - refers to all civil rights restorations, even those by a jurisdiction other than the one in which the conviction was entered.

33.     The Ninth Circuit's argued that because there is no federal procedure for restoring civil rights to a federal felon, Congress could not have expected that the federal government would perform this function, and that therefore the reference in § 921(a)(20) to the restoration of civil rights must be to the state procedure." Defendant should be ordered by this Court to investigate the criminal acts perpetrated against the Plaintiff by federal agents. Likewise this Court should order the defendant to order Congress to make monies available to ATF (Alcohol Tobacco and Firearms) to investigate people like the Plaintiff to restore their firearms rights. And enter an injunction against federal interference with parties who have obtained a pardon from a governor, or a governor, or state entities.

34.     This could mean the law of the State in which the prior conduct took place, or to the law of the State in which the felon now lives or has at one time lived - people in some jurisdictions would have options open to them that people in other jurisdictions may lack. Under the Plaintiff reading of the statute, a person convicted in federal court is no worse off than a person convicted in a court of a State that does not restore civil rights.

35.     In order to fully understand the vase differences between the Plaintiff circumstance and either Beecham or Jones, we have to look closer at the State of Louisiana Sovereignty. The Louisiana Constitution reads: "The people of this State have the Sole and Exclusive Right of Governing themselves as a Free and Sovereign State; and do, and forever here after shall exercise and enjoy every power, Jurisdiction, and right, pertaining thereto, which is not, as many not hereafter be, by them expressly delegated to the Obama. The Governor of Louisiana in its Sovereignty has the power as in England to forgive a federal conviction, restoring all civil rights. It is a known fact that Louisiana Law is different in its practice than any other State in the Union. As already stated a Federal Judge and the U.S. Attorneys office would not have opposed the Plaintiff restoration of his Civil Rights, including the right to own, transport,

ship, receive, and buy firearms unless the Governor of Louisiana had such power to do so.

36.     "The governor may grant reprieves to persons convicted of offenses against the state and, upon favorable recommendation of the Board of Pardons, may commute sentences, pardon those convicted of offenses against the state, and remit fines and forfeitures imposed for such offenses." La. Const. Art. 4, § 5(E)(1).

37.     The governor's pardon power derives from the Common Law of England. "The pardoning power has always been construed in this State in the same manner as in England. 'The term being derived from the Common Law of England, must have the same import in our Constitution and laws which belongs to it in England.'" State v. Lee, 132 So. 219 (La. 1931), quoting McDowell v. Crouch, 6 La. Ann. 365.

38.     The laws of Louisiana impose significant consequences on persons convicted of any felony, whether federal or state. The governor, by pardoning a federal convict, extends the grace of Louisiana on that person to restore those rights that were taken away by Louisiana law as a consequence of the federal felony. Looked at another way, the governor commutes the portion of a federal sentence that is imposed solely by virtue of Louisiana law. See AG-OP No. 79-787.

39.     Plaintiff wishes to bring to the Courts attention: 18 U.S.C. 921 (20). Paragraphs A and B of this provision specifically enumerate several felonies that are not included under the umbrella of crimes "punishable by imprisonment for a term exceeding one year." These are any federal or state offenses "pertaining to antitrust violations, unfair trade practices, restraint of trade, or other similar offenses relating to the regulation of business practices" and "any state offenses classified by the laws of the state as a misdemeanor and punishable by a term of imprisonment of two years or less." Therefore, a person convicted in federal or state court of a

felony related to regulatory business practices may legally possess a firearm once they've completed the terms of their sentence or probation.

40.    Antitrust violations, unfair trade practices, or other similar offenses relating to the regulation of business practices is an act of fraud, without the benefit of any violence's.

41.    The Plaintiff pled to an criminal information of Producing False Identification cards, which is considered a fraud, and there was no violence against any persons, and the Plaintiff was accused of using said identification cards for business purposes. Factually, government filed several indictments against the Plaintiff for mis-use of a social security number, credit card fraud while allegedly trying to obtain a credit card in a fraudulent manner. The Secret Service alleged that the Plaintiff used false identification cards in relocating to Virginia, by making the moving company believe that the Plaintiff was a government agent, which is deceptive. Plaintiff allegedly did this by presenting a government ID to the company that purported him to be a government agent. Factually, a statement made by Robert Porter III that was taken by the U.S. Secret Service, clearly set out the Plaintiff had an F.B.I. card and a gun on his side when renting a storage space from him allegedly to obtain a discount.

42.    This would be considered as unfair and deceptive trade practices. In other words rent the storage at a government rate, where the Plaintiff would not have otherwise qualified for a government rate.

## VII.  PLAINTIFFS ALLEGED CRIME WAS ANTI-TRUST/DECEPTIVE

43.    The terms "unfair" and "deceptive" is defined as padding repair bills or misrepresenting a used car's history or its condition are undeniably unfair. Proving fraud or deception can be shown by a claim or representation "had the capacity, effect, or tendency to

deceive." Moreover, the capacity to deceive can be found without a finding that anyone has actually been deceived.

44.    In fact, even a truthful statement may be deceptive if it has a capacity or tendency to deceive. Producing and making false United States Identification cards would be an action that would be in the interest of the public. Again, false identification cards would inherently have an impact on the public interest, because it affects the rights or interest of more than a limited party. To qualify as being unfair or deceptive acts or practices could be padding repair bills, misrepresentation of used car history.

45.    The Secret Service alleged that the Plaintiff used the logo of the C.I.A., which is a similar Anti-Trust violation, [Trademark/Copyright] violations.

46.    Subject to the requirement of public impact, a violation of Federal trademark or copyright law may subsequently result in a violation of the similar Anti-Trust type of violations. The report from the Secret Service stated that the Plaintiff did Produce and make false United States documents that appeared to look like those documents issued by the United States, [t]hat: Plaintiff used a look alike logo of the Central Intelligent Agency on the False Identification Cards he manufactured.

47.    The Plaintiff pled guilty to the Producing and Making of False United States Identification cards. Because the actions of the Plaintiff falls under 18 U.S.C. 921 (20), because his health was failing because of the treatment that he received while incarcerated was equal to or worst than treatment of a prisoner of war in a foreign country. Plaintiffs has a right to bear arms because the Plaintiff conviction falls within the scope of an exception that is provided to certain felony crimes, under 18 U.S.C. 921 (20). Anti-Trust and consumer protection case law generally follows the pattern that a consumer-choice would suggest. As said, Plaintiff was subjected to

horrible living conditions in the Virginia Beach jail. The Plaintiff wrote the following below to describe how inhumanely he was treated while incarcerated in the Virginia Beach jail:

"The shock of being arrested and the trauma of this awful experience disrupted my bodily functions. I developed a bad case of diarrhea. When I was transported from one of my court hearings to the jail, a white federal marshal refused to un-handcuff me so I could use the restroom. An empty cell was available right behind me, which had a toilet I could have used. I asked the federal marshal, "Would you please un-cuff me because I need to make a bowel movement and I have diarrhea." The marshal responded, "I am going to eat lunch. I will come back in an hour or so, and you're just going to have to hold it." he laughed. I could not hold my bowels, and the pants I was wearing became stained with my own feces. Eventually, I was able to take off the stained pants, but I had no means of cleaning myself up. I had to sit in a cell for over three hours before I was able to take a shower and clean the feces off my body. This wasn't a foreign country inflicting this type of demoralizing and disgusting treatment upon me; it was my own country. I advised the authorities at the jail and my court-appointed attorney of the feces-stained pants. But dreadfully, I had to wear those same feces-stained pants for the duration of my incarceration (161 days)—each and every time I went to court. This type of treatment was below the standards of the Geneva Convention for prisoners of war."

## VIII. PLAINTIFF SEEKS A NONSTATUTORY REVIEW OF DEFENDANT'S BARACK OBAMA BEHAVIOR AND RESPONSE TO ALLEGATIONS MADE HEREIN

48.     The federal agents aggression against the Plaintiff was in all probability on account of his race, African American and a violation of Plaintiffs civil and constitutional rights. I direct the Courts attention to *Forrester v. White,* 108 S.Ct. 538, 484 U.S. 219, 98 L.Ed2d 555. *Forrester* filed a lawsuit in the United States District Court for the Southern District of Illinois in July 1982. She alleged violations of Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. § 2000e et seq., and § 1 of the Civil Rights Act of 1871, Rev. Stat. § 1979, as

amended, 42 U.S.C. § 1983. A jury found that Judge White had discriminated against Forrester on account of her sex, in violation of the Equal Protection Clause of the Fourteenth Amendment. The jury awarded her $81,818.80 in compensatory damages under § 1983. Here, the U.S. Supreme Court, acting in a case involving sex-discrimination charges against a former Illinois judge, ruled that judges *do not have what amounts to absolute immunity from nonjudicial decisions or acts*. Typically federal agents also enjoy immunity but not in a case where they have committed serious felony crimes as in the Plaintiffs case.

49.     The president of the United States also has immunity, much like a judge but that immunity for a judge or the president of the U.S. is conditional. Neither have absolute immunity regardless of what they do. William Clinton proved that he could be sued and his deposition taken—though he made it a mockery. The Supreme Court held that a judge is immune only from lawsuits related to clearly judicial, not administrative actions. The defendant failing to investigate a serious crime committed by federal agents may be looked upon as an administrative duty than an official. Though the Plaintiff *is not seeking any money damages* from defendant Obama.

50.     By comparison to judges conduct who has immunity, in looking at whether or not the acts of these judges are administrative or judicial the U.S. Supreme Court apparently directed their attention at the particular act's relation to general function normally performed by a judge. Plaintiff is not sure if the defendant normally investigate criminal behavior of federal agents but he is the commander in chief and he should had investigated the Plaintiffs claims as a citizen of the United States, especially when the Plaintiff provided tangible evidence to the defendant that a crime had been committed by federal agents.

51.     Plaintiff believes that the defendant like judges undoubtedly may be sued under §1983. Under *In re Justices*, whether judges are proper defendants in a § 1983 action depends on whether they are acting as adjudicators or advocates. Plaintiff is respectfully requesting this Court

for a nonstatutory review of the President's behavior and injunctive and declaratory relief for other defendants. Defendant has also allowed the Plaintiffs rights be violated under §1982 claim. 42 USC §1982 states: all citizens of the U.S. shall have the same right, in every state and territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real personal property. The primary goals of the white federal agents apparently from their behavior was to remove the Plaintiffs rights to bear arms because of his race. As said, the Plaintiff had one of the finest firearm collection in the U.S. and the white federal agents involved in the Plaintiffs criminal case apparently by their behavior were focused on depriving the Plaintiff of his rights to inherit, purchase, sell, lease or convey the real property of firearms and ammunition.

52.     Plaintiff complained to defendant Obama how his rights to possess, purchase, lease, sell, hold, and convey firearms were violated. But the defendant failed to act to correct, protect, or investigate the Plaintiffs claims—although the defendant had tangible proof that a crime had been committed. This Court should order the defendant to investigate Plaintiffs claims in violation of §1982, and enter an injunction against the defendant's agents from continuing to violate his rights to possess firearms.

53.     The congressional budget office reported a surplus of $236 billion in 2000, the last full year of former President Bill Clinton's administration. Even when lawmakers were jubilant, conversing among themselves about how they would appropriate those resources Congress nevertheless would not provide any money to ATF in order to allow citizens like the Plaintiff to have his background checked for possession of firearms. Therefore, claiming that the budget will not allow the defendant or his agents to act would be just an excuse. This Court should order the defendant to propose a bill to Congress that would allow people like the Plaintiff to pay ATF for this investigation of their background, which would develop millions of tax dollars in this nation in a deeply struggling economy. Defendant like previous presidents of this nation has sent men and women overseas to die in wars this nation has created. Defendant

**PLAINTIFFS ORIGINAL COMPLAINT AND REQUEST FOR DECLARATORY**
**AND INJUNCTIVE RELIEF PURSUANT TO PLAINTIFFS CONSTITUTIONAL RIGHTS      PAGE    20**

young idealistic men a machine gun and said, "Go fight for your country. But here in the states, a citizen who has not had one single violation of the law in over 22 years and has a pardon from the governor cannot protect himself or his family by possessing a firearm. Every citizen of this nation has a right to protect themselves and their property but the defendant, and his agencies has infringed upon those rights of the Plaintiff unjustly—and has refused to respond to the Plaintiff.

## VIII. PLAINTIFFS' APPLICATION FOR TEMPORARY
## INJUNCTION AND PERMANENT INJUNCTION AND DECLARATORY RELIEF

54.     Plaintiff, Eric Drake has been in all probability the victim of federal agents conspiracies which were serious felony crimes. Defendant has refused to investigate the serious crimes committed by U.S. federal agents against the Plaintiff. Plaintiff asks this Court for an injunction and declaratory relief, to order the defendant to investigate his claims filed herein. Plaintiff seeks an order from this Court, ordering the defendant to conduct an investigation into the Plaintiffs claims and injunctive relief from BATF or the FBI from preventing the Plaintiff from exercising his rights to possess, purchase, ship, receive firearms as his state pardon states.

55.     Plaintiff spent considerable time and effort to obtain his State Pardon from the governor of Louisiana, Governor Edwin Edward's. Although the Plaintiff lawfully received his pardon, he has been advised by the defendants (ATF) and (FBI) that his state pardon is not sufficient to restore his rights to bear arms by federal standards. The Plaintiff is also requesting this Court to order the defendant Obama, to order an investigation of whether or not the Plaintiffs state pardon is sufficient to possess firearms. And to investigate whether or not a presidential pardon would protect citizens of this nation more so than a state pardon where the felon presently lives. It makes no legal sense that a federal felony should have to obtain a federal pardon.

56.     The Plaintiff's civil rights has been restored in writing, pursuant to his state pardon signed by the governor of Louisiana, where the state pardon clearly state that the Plaintiffs rights have been fully restored to possess, own, ship, transport, receive and bear firearms. More importantly, the Plaintiff is not subjected to USC § 922(g)(1), because the crime that he was

forced to pled to allows an exception to §922(g)(1) under USC §921(a)(20)(A). The crime, "the information" that the Plaintiff pled to is considered an anti-trust, deceptive and unfair act, which is an exception to §922(g)(1).

57.    If the requested relief is not granted, Plaintiff Eric Drake will continue to suffer immediate, irreparable harm:

a).    The defendant will not protect the Plaintiffs rights, nor will the defendant investigate the Plaintiffs serious allegations against federal agents if not for this Courts intervention. Defendant will continue to allow BATF and the FBI to violate the Plaintiffs constitutional and civil rights by the very act of denying the Plaintiff to protect himself, his family, and his property and denying him ownership of a firearm, and by continuing to deny Plaintiff the ability to purchase, own, possess, transport, ship, and bear firearms in the United States in violation of §1982 and violations of his first amendment rights. Moreover, the defendant will not investigate the serious charges Plaintiff has alleged herein unless ordered by this court to investigate this matter. Defendant will not investigating the criminal acts of the federal agents involved in Plaintiffs 1990 case, thus the Plaintiff will continued to be harm, because an investigation will reveal the truth and allow the Plaintiff to be free, finally after over 20 years of being found wrongfully convicted at the hands of corrupt federal agents and federal judges. If these charges made by the Plaintiff are correct, agents as such pose a serious risk to national security of this nation, thus the defendant has an obligation to act for the safety and well-fare of every American citizen. Any agent that is capable of manufacturing evidence in a criminal matter, it is reasonable that the same agents would be willing to sell secrets to our enemies.

58.    It is essential that the Court immediately order the Defendant to investigate the allegations of criminal activity by federal agents, because the harm to the Plaintiff is continuing day by day. And to enjoin the defendants BATF and FBI from their wrongful acts and violations of the Plaintiffs rights as a citizen. Otherwise the defendant will allow BATF and the FBI inevitably to continue to abuse and violate the Plaintiff constitutional civil rights. And as said, these agents are a risk to national security and the safety and well-being of this nation citizens.

59.    The Plaintiff Eric Drake has no adequate remedy at law for the injuries described above, and the injuries are continuing.

60.    The immediate and temporary restraint of the Defendant Obama and the FBI, BATF, U.S. Secret Service and other government agencies that is controlled by the defendant from continuing with the conduct described above is essential.

61.    The Plaintiff Eric Drake seeks injunctive relief from this Court:

A writ of injunction may be granted if:

1).    the applicant is entitled to the relief demanded and all or part of the relief requires the restraint of some act prejudicial to the applicant;

2).    A party performs or is about to perform or is procuring or allowing the performance of an act relating to the subject of pending litigation in violation of the rights of the applicant, and the rights of the applicant, and the act would tend to render the judgment in that litigation ineffectual;

3).    The applicant is entitled to a writ of injunction under the principles of equity and the statutes of this state relating to injunctions.

62.     For the potential harm and damage that would be inflicted upon the Plaintiff but for the intervention of this Court, Plaintiff has no adequate remedy at law. Plaintiff will continue to experience harm and his criminal case will continue to be concealed by the defendant's to protect those agents of their crimes committed against the Plaintiff.

63.     Plaintiff also seeks and is entitled to a permanent injunction because:

a).     Plaintiff is entitled to the relief above demanded and such relief requires the enjoining of the Defendants and its agents, agencies, and representatives from acts that will be prejudicial to the Plaintiff and to restrain the Defendant Barack Obama, BATF, and the FBI from acts that will be abusive, and that violate Plaintiffs rights and liberties as an American citizen;

b).     The Defendants or its agencies either separately or jointly has or is about to perform action that are in violation of the Plaintiffs constitutional and civil rights of gun ownership and possession which will result in loss of the Plaintiffs rights to own, ship, transport, possess, and bear firearms and would render judgment in this litigation ineffectual;

c).     Plaintiff is entitled to a writ of injunction under the principles of equity;

d.     Irreparable injury to the Plaintiff Eric Drake constitutional, civil, and common law rights will continue to be realized by the Plaintiff irrespective of a remedy at law. Moreover, irreparable injury may be caused to this nation, its security, its people because the agents who

conspired to file false witnesses, documents, claims and indictments against the Plaintiff is capable of selling secrets to foreign countries or worst.

64. The Plaintiff rights were fully restored by the Louisiana State Pardon, including the right to own, transport, buy, sell, and possess firearms. Unlike Beecham, Jones, or Gyler the Plaintiffs civil rights have been fully resorted in writing by the governor of Louisiana through a state pardon, were the pardon clearly defines the rights of the Plaintiff to possess, own, ship, and receive both ammunition and firearms.

65. The criminal information that the Plaintiff was forced to plead to and the circumstances of that conviction fall within the scope of similar offenses for deceptive, unfair acts under the anti-trust laws, and the Plaintiff is therefore excluded from disabilities imposed by 18 USC 922(g)(1). The Plaintiff pled guilty to producing false Untied States identification cards, which those identification cards would fall under the (Sherman Anti-trust laws) is an unfair, deceptive act, to misrepresent, ultimately affecting he public in trade and or commerce.

66. Plaintiff respectfully request an injunction against the defendants, and any state or federal governments and or any of its agencies or representatives acting upon its behalf, that may prevent rights of the Plaintiff as a U.S. citizen.

## IX. PLAINTIFF IS EXEMPT FROM §922(g) BECAUSE HIS RIGHTS HAVE BEEN RESTORED AND BECAUSE OF THE NATURE OF THE OFFENSE

67. Pursuant to USC §922(g) any conviction for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of felon illegally in possession of a firearm.

68.     USC §921 (20), states, "Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

69.     Plaintiff received a full restoration of his rights through the governor's pardon attached herein as Exhibit "B." The pardon expressly gives the Plaintiff the right to own, ship, receive, possess, and transport firearms. 18 USC §921 (20), clearly set forth exclusions to 18 USC §922(g)(1), if the conviction has been pardoned as in the Plaintiffs case and his civil rights were completely restored by the governor of Louisiana.

70.     The federal system has no means to resort a felons civil rights, therefore the test of whether or not the Plaintiff have his civil rights restored in the federal system is to determine if the Plaintiff can vote, set on a jury, and hold public office. Plaintiff is a registered voter and has set on a jury. Pursuant to 18 USC 1865(b), under "Qualifications for jury service," the Plaintiff qualifies to set on a federal jury.

71.     Plaintiff is capable of running for election of a federal public office; this was decided in Malone v Shyne, No: 41, 781-CA. The language of Art. I, § 10(B), the person convicted under the laws of the United States as a felon who "has been pardoned either by the governor of this state or by" the President of the United States is no longer disqualified to be a candidate for public office. The literal language makes no distinction requiring a gubernatorial pardon for the felon convicted under state law and a presidential pardon for a federal felon. The Governor of Louisiana is given the power to pardon a party convicted in either jurisdiction. The appellate court did not believe this decision was a conflict with federal law. But unlike Shyne, Plaintiff civil rights are fully restored pursuant to both state and federal law requirements and

pursuant to 18 USC §921(20), because the Plaintiff is allowed to own, possess, purchase, receive, and ship firearms. When it came to felons' gun rights, the legislation essentially left the matter up to states. The federal gun restrictions would no longer apply if a state had restored a felon's civil rights —to vote, sit on a jury and hold public office — and there were no firearms prohibitions.

72.    Congress passed the "Firearm Owners Protection Act of 1986," Pub.L. No. 99-308, §1(a), 100 Stat. 449 (1986). Congress amended section 921(a)(20) "to give federal effect to state statutes that fully restore the civil rights of convicted felons when they are released from prison, or are granted a pardon, or have their convictions expunged." FOPA's provision, in section 101(5), provide that a state expungement or restoration of civil rights following conviction restores federal rights to possess firearms, absent a state provision to the contrary.

73.    The Plaintiffs right to own, possess, purchase, ship and receive firearms were restored fully by the governor's pardon and by the Louisiana Constitution. Pursuant to USA v Dupaquier, 74 F.3d 615 (5th Cir. 1966), Defendant Dupaquier was convicted of possession of a firearm by a convicted felon in violation of 18 USC 922(g)(1). The Court determined that Dupaquier possession of a firearm could not be used as a predicate offenses, because Dupaquier civil rights were restored under Louisiana law. Plaintiff also refers this Court to: US v Thomas, 991 F2.d 206, 209 (5th Cir.). If the Plaintiffs rights were not affected by his governor's pardon why did Judge Robert G. Doumar (presiding judge in Plaintiffs cause of action) plea with the governor not to restore his rights, if indeed the governor had no power to do so? *See Exhibit "C."* In this exhibit, Doumar with no medical expertise or experience states, "I felt that this gentleman needed some psychiatric counseling." It was Doumar's reckless action that needed to be restrained along with the other judges who violated Plaintiffs rights. And again, a letter from Mark A. Exley (Assistant United States Attorney) express an opposition to the Plaintiff receiving his rights restored. But again, if the governor does not have that power—why haven't a judge and

a U.S. attorney stated that Governor Edwards do not have the power to restore the Plaintiffs firearm rights? *See Exhibit "D."* Doumar and the U.S. attorney were responding to a letter from Bill Swygart. *See Exhibit "E."*

74.      Plaintiff also believes that he qualifies to possess firearms pursuant to § 921(a)(20)(A) because the crime that the Plaintiff was forced to plea to is an anti-trust/deceptive type of crime. United States v. McLemore, 792 F. Supp. 96, 98 (S.D. Ala. 1992) (crime of odometer tampering, 15 U.S.C. §§ 1984, 1990c(a), an "unfair trade practice" crime was within the scope of § 921(a)(20)(A)). The act rolling back an odometer affected consumers and the public as a whole, just as an alleged act of using an identification claiming to be an agent for the FBI, as the government claimed the Plaintiff acted in his alleged crime.

75.      The statute also speaks about violations of anti-trust as being eligible for consideration to 921 (a)(20(A). Deceptive trade practices and anti-trust have one thing in common, the act of deceiving. Pursuant to USC 1028 (4) the term "false identification document" means a document of a type intended or commonly accepted for the purposes of identification of individuals that - (A) is not issued by or under the authority of a governmental entity or was issued under the authority of a governmental entity but was subsequently altered for purposes of *deceit.* Crimes under 1028 are crimes of deception, and the government claimed that the Plaintiff used these false documents to mis-identify himself as a federal agent. Pursuant to 1028, *identity theft* is listed under the statute. The statute that the Plaintiff pled to USC §1028, is actually listed in the federal "Antitrust Division Manual" under chapter II, Statutory Provisions and Guidelines of the Anti-trust Division.

### IX. PLAINTIFF REQUEST DAMAGES FROM BATF AND THE FBI

76.     After the Plaintiff was arrested in Virginia, Plaintiffs wife contacted the authority because he had failed to come home. Plaintiff wife had no idea that the Plaintiff was incarcerated. Once the local police discovered that there was a firearm collection in the apartment, special agent for the BATF, Raymond Rowley obtain a search warrant for the Plaintiffs home. In the search warrant Rowley made statements of fact that was fabricated. On the second page of the document entitled as "Affidavit for Search Warrant," 3rd paragraph, starting at the sixth (6th line), Plaintiffs Exhibit "F" Rowley states:

> "Also located in the truck were several microcassette tapes, a portion of which had a recording of a voice which appears to be that of the Plaintiffs, which states that he sold approximately $106, 853 in weapons, however that he had only received credit for $60,000 of sales."

The BATF agent Rowley made this statement, Plaintiff assumes to make the court feel like the Plaintiff was selling firearms illegally. But he knew it was false when he made it. Unlike the false document that the Secret Service manufactured with Robert H. Porter III. Plaintiff was unable to obtain a copy of this alleged evidence—because it never existed, expect in the minds of the corrupt BATF agent Rowley's mind, nevertheless, by making false statements to obtain a search warrant is a crime. None of the firearms in the Plaintiff collection was illegal. Plaintiff was never charged with a firearm violation. Having magazines loaded is not a crime, but Plaintiff had loaded the magazines two days before his arrest so the springs wouldn't so new, making them function better when needed. Nor is serrated-edge knifes, or straight razors, police scanners, or handcuffs a crime. Most gun collectors like the Plaintiff kept a visual (photo) record of any firearms in their collection, as well as serial numbers of the firearms and descriptions of any

firearms or accessories for insurance and recovery reasons. Firearms should be closely monitored and guarded; this is the reason they were in locked cases. And the list of their value was for Plaintiff wife to have an idea what the firearms was worth in case of his death. But the government agent's reports failed to state that the Plaintiff was employed with a gun distributor in Texas, that the Plaintiff is an expert on small arms, law enforcement and military equipment— which the Plaintiff job was to give law enforcement agencies in the nation advise on firearms and equipment at Dave's House of Guns.

77.    A multiagency federal investigation into the Plaintiffs background and traces on firearms that Plaintiff owned proved the federal government had no case: There was no crime, no evidence of a crime, nothing illegal, and Plaintiff had no criminal history. Without a crime to prosecute, someone involved with in the Plaintiffs case manufactured evidence and witnesses. Plaintiff has since discovered that this type of behavior is not uncommon for agents of the U.S. government. I don't know who manufactured the evidence and witnesses. But logically, the only agencies that could benefit from such evidence were the U.S. secret service, or the Bureau of Alcohol, Tobacco, and Firearms. When Plaintiff received the indictment against him, charge number five alleged that Plaintiff had a Federal Bureau of Investigation (FBI) identification card and a concealed firearm on the Plaintiffs side. Robert H. Porter III, the government's witness, allegedly observed me produce identification that Plaintiff was a federal agent and saw the firearm when the Plaintiff went for his wallet at a place of business called the Vault. The problem with that story is the Plaintiff did not carry a wallet at that time. Nor did Plaintiff have any identification purporting to be a federal agent or a firearm on the Plaintiffs side. *See Exhibit "A."* This is actual evidence that federal agents have committed a felony crime because this sworn statement is completely false. It is the Plaintiffs understanding that Porter was himself a past

federal agent with some government agency—though, the Plaintiff has no proof of that allegation. It is however a conspired felony act between federal agents and a citizen of this nation,

78. The alleged Federal Bureau of Investigation identification card was never produced in court, because it never existed. When the twelve carloads of federal agents stormed Plaintiffs apartment at 11:04 P.M., while Plaintiff was in jail, arrested wrongfully, and the Plaintiffs wife was alone and pregnant, the government did not find a FBI identification card or wallet. On the night of Plaintiffs arrest, which the Plaintiff absolutely did not expect, the jail did not recover a FBI identification card or a wallet from the Plaintiff. The allegations of a FBI card and wallet were manufactured by federal agents to justify Plaintiffs arrest. Without question, agents for the government felt safe making up such details about the Plaintiff. And they actually were safe, because no agencies in the federal government will honestly investigate this type of corruption for the sake of an ordinary citizen. This is the reason why this Court should order defendant Obama to investigation this case because these agents are a serious risk to national security. Federal agents have access to many things that could result in obtaining secrets of this nation and selling them to other nations. Any person that is capable of manufacturing evidence is capable of undertaking other illegal acts for gain. These actions clearly violated my constitutional and civil rights, and they are on-going in violating the Plaintiffs rights.

79. Agents for the BATF and Secret Service violated the Plaintiffs rights. They manufactured in all probability evidence, witnesses and provided this evidence to the US Attorney Oliver Norell. At some point the Plaintiff believes that Norell knew about the falsity of the evidence, thus there was a push to obtain a plea from the Plaintiff.

80. As said the Plaintiff obtained a pardon from the governor of Louisiana, and for reasons stated herein, Plaintiff has every right to bear arms—but defendant BATF and the FBI

has forbid the Plaintiff from purchasing firearms for now over 20 years. These agencies knew that the Plaintiffs rights to bear arms were returned to him as pled herein but they claimed otherwise, and rejected his pardon, only because they had the power to do so—wrongfully. Plaintiff rightfully should obtain damages from the defendants BATF and FBI for their wrongful acts against him. The hardship that the defendant placed on the Plaintiff was so severe that parts of the events were blocked out of the Plaintiff mind for an extended period of time. It took the Plaintiff over 5 (five) years just to begin to live like a normal person after such abuses. Plaintiff recalls his first few days in jail:

> An inmate came by to serve lunch, and pushed a tray of food under the bars of my cell door. But food wasn't on my mind. Besides, I couldn't have eaten anything even if I wanted to—not in that smelly, vermin-infested environment. The inmate said, "Man, you got to eat something." But for me there were no tomorrows in sight—just anxiety like I had never known in my life.

> Day Three:
> I opened my eyes, and I was still alive. But clearly my body was getting weaker. I had to force myself to eat something, though digesting anything in that stomach-turning cell was difficult. On some days, the jail served a small carton of milk on my food tray. I consumed the milk, but otherwise went hungry. The guards didn't issue me a toothbrush, soap, or towel for ten days. And my digestive system's normal functions were in disarray, because my body was in shock. I had no means to escape the repulsive situation I was made to endure.

> Day four, five, six, seven, and eight passed. There was a bright light over my head twenty-four hours a day. I no longer fell asleep like a normal person. I didn't relax into sleep, but just passed out from exhaustion. My nerves were stretched to their limits, and this terrifying ordeal was like an unstoppable runaway train. Tears ran down my face as I lay helplessly awaiting a dismal future. I couldn't think of any plans, because I had no idea what to expect from

one minute to the next. I frantically worried about my wife and unborn child, but was powerless to assist them in any manner. I thought I would die in that disgusting cell, and never see them again.

Day Nine and Ten:

Since arriving in my cell, I wasn't given the opportunity to take a shower. I was forced to live in filth. My mind was dazed and in disbelief at what was occurring. For ten days the guards at the jail did not provide me with a sheet, pillow, toilet paper, soap, toothpaste, or a shower. This scenario was a heightened torment for a person like me, who is very clean and neat. I was forced to live like a deranged animal. I recall thinking that I would never look at a caged animal in the same manner again. On the eleventh day I was finally granted permission to take a shower. My mind was already stretched to its limit, and I wept as I tried to muster the strength to wash my smelly body. I was treated like I was a communist prisoner of war. This was the start of the government's onslaught against me, to break me down mentally and physically, so that I would be ready to plead guilty to anything in order to be released. It was enough to make any normal person go insane.

Insects infested the shower stall, as if it was their normal environment. They crawled up and down the inside of the shower compartment, like automobiles during rush hour on an interstate highway. I could not identify what type of insects they were, but the sheer number of them was enough to be considered an infestation. To make matters worse, inmates would masturbate on the shower floor. So, if I desired to take a shower, I would either be the first or second man in the shower, or else I would wait until the next day. Rats came out of the shower drain hole when food was served. They crawled into the lower sleeping bunks where men slept, looking for anything they could eat. Men purchased candy from the canteen, which also attracted the rats.

Employees of the jail treated the inmates as if they were animals in a badly maintained zoo. The unsanitary conditions in the cellblock promoted diseases of all kinds. The inmates asked for disinfectants, but those requests fell on deaf ears and were ignored. I drafted a formal complaint, and a majority of the prisoners signed the petition. I also sent a letter of grievance to the Bush administration, and the jail confirmed that the president of the United States received my letter. But there were no attempts by the jail guards, state officials, or federal authorities to correct the appalling living conditions, which the inmates were forced to endure.

During the nights I would hear men screaming for help, because other inmates were attacking them. The guards rarely bothered to respond—its nothing like the television shows about jail. Any normal person would gladly plead guilty to any crime if that allowed them to escape from that perilous situation. Factually, before presenting any evidence against me, the U.S. government began its campaign to punish me.

81.     The conditions of the jail were horrendous and a health hazard. Plaintiff directs this Court to Plaintiffs Exhibit "G." (A petition drafted by the Plaintiff while incarcerated in the Virginia Beach Jail, and signed by other inmates of the unsanitary conditions). BATF and the FBI has continually conspired to injure the Plaintiff in violation of 18 USC, Section 241. Plaintiff has a right to bear arms secured to him by the Constitution and the laws of the United States. And BATF and the FBI violated 18 USC, Section 242, by willfully depriving the Plaintiff of his right to bear arms that are protected by the Constitution and the laws of the United States. Thus BATF, the FBI, and DOJ owe the Plaintiff damages for their willful acts against him.

## X.  CONCLUSION

82.     The Plaintiff pled guilty to USC 18 § 1028, which § 1028 is fraud and related activity in connection with identification documents, authentication features, and information. Pursuant to § 921, (a)(20)(A) the statute includes any infraction of the law that is a similar offense to any Federal or State offenses pertaining to antitrust violations, unfair trade practices and or

restraints of trade. Plaintiff pled guilty as a result of criminal activity in all probability by federal agents, ie: U.S. Secret Service and possibly one ATF agent and a person by the name of Robert H. Porter III who apparently and in all probability conspired with the U.S. Secret Service federal agents against the Plaintiff. Defendant received a court document which had attached to it an exhibit that was manufactured by federal agents and Robert H. Porter III. This document is proof that the federal agents possibly committed serious felony crimes against the Plaintiff. Defendant has failed to respond to the Plaintiff or investigate the serious felony crimes he has reported to defendant Obama. Regardless of whether or not the Plaintiff is considered a federal felon, he is still a U.S. citizen, though agents for the government has stripped the Plaintiff of some of his rights and the defendant has failed to investigate or protect the Plaintiff.

83. Plaintiff rights as a citizen of the U.S. has been violated. Plaintiff has asked this Court for injunctive and declaratory relief. Without this Court acting on the Plaintiffs requests there is no possibility in the Plaintiff receiving any assistance from the defendant Obama or any of the agencies that he oversee, control, or command. Defendant is running for re-election. His opponent can't win. Plaintiff did not say that the defendant's opponent may or probably would not win the presidency, but that his opponent can't win—[for reasons unrevealed at this time]. Plaintiff therefore respectfully requests that the defendant launch an intense investigation into the allegations made herein—yet, the Plaintiff doubts if the defendant will do so. Therefore the Plaintiff respectfully requests this Court orders the defendant to investigate the Plaintiffs claims that he has made in this petition to protect the rights of the Plaintiff who is a citizen, and for national security reasons. Defendant is therefore compelled to investigate the Plaintiffs claims.

84.     Plaintiff, Eric Drake, respectfully request for this Honorable Court to grant the injunctive and declaratory relief that is requested and prayed for herein. Plaintiffs rights has been violated, and the defendant has refused to investigate the Plaintiffs complaint, even though Plaintiff forwarded compelling evidence that a crime probably had been committed by federal agents and Porter III—a non-federal agent, and citizen of this nation. Plaintiff is willing to take a polygraph test to confirm his allegations. The defendant has failed to protect the Plaintiffs rights, failed to investigate the Plaintiffs complaint, and failed to uphold the laws of this nation and is possibly putting his nation at risk with such federal agents accessibility to government secrets.

85.     Plaintiff suffered emotional trauma, as a result of Defendants willful and intentional behavior. Plaintiff by this action, seeks compensatory damages, expert fees, cost, interest, punitive damages, and all other monies and damages to which he may be entitled and:

- Attorneys' fees for preparation and trial;

- Attorneys' fees if there is to be an appeal to the Court of Appeals;

- Attorneys' fees if there is to be an appeal to the Supreme Court of the United States;

- Loss of the benefit of the bargain;

- Incidental damages;

- Past mental anguish;

- Future mental anguish;

- Future and past emotional distress;

## XI. ATTORNEY FEES

86.     Plaintiff is entitled to attorney fees and cost under Title VII, 42, U.S.C. 2000-5(k) and 42 U.S.C. 1981 (b).

## XII. PARYER FOR RELIEF

87.     Wherefore, Plaintiff prays for a judgment against Defendants BATF, FBI, and DOJ as follows:

1.      Plaintiff prays for the injunctive and declaratory relief made herein against all defendants.

2.      Special damages for Plaintiff Eric Drake in an amount to be determined at trial;

3.      Punitive Damages in an amount to be determined at trial;

4.      Cost of suit;

5.      Attorney fees for preparation and trial;

6.      Attorney fees if there is to be an appeal to the Supreme Court of Texas;

7.      Incidental damages;

8.      Past mental anguish;

9.      Future mental anguish;

10.     Past and future emotional distress;

11.     Prejudgment interest;

12.     Plaintiff likewise prays for a judgment against the United States and its agencies, BATF, FBI, and DOJ.

13.     For such other and further relief as the court deems just and proper.

## XII. DEMAND FOR JURY TRIAL

88.     Plaintiff hereby demands a trial by jury with respects to any and all claims and or issues to which he are so entitled.

Respectfully submitted,

E. Drake
1739 University Avenue, # 334
Oxford, MS 38655
404-379-1127

Exhibits attached

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

**E. DRAKE**                                    CASE No. _____

              **Plaintiff**

**VS**

## BARACK OBAMA, BUREAU OF ALCOHOL, TOBACCO,
## FIREARMS, FEDERAL BUREAU OF INVESTIGATION,
## AND THE DEPARTMENT OF JUSTICE

              **Defendant**

### AFFIDAVIT IN SUPPORT OF INJUNTIVE RELIEF AND DAMAGES

STATE OF TEXAS

COUNTY OF DALLAS

    BEFORE ME, the undersigned authority, personally came and appeared, Eric Drake, who being first duly sworn, did depose and state the following:

    1.      My name is Eric Drake. I am over the age of 21. I am fully competent and capable of stating the matters set forth herein below, which matters are personally known to me. Hereon Eric Drake shall be referred to as 'Affiant.'

    2.      Affiant testifies that the exhibits attached to his original petition, exhibit's A, B, C, D, E, F, and G are unaltered copies from a certified copy of his criminal file: 90-80-N. Affiant testifies that Robert Porter's III sworn statement is false: 1). Affiant did not have a gun on his side, 2). Affiant did not have a FBI Identification card at any time, and 3). Affiant did not carry a billfold at that time. This exhibit is proof of a conspiracy between federal agents and Porter.

    3.      Affiant likewise testifies that he never possessed or recorded any tape recordings stating that he had allegedly "sold approximately $106, 853 in weapons, however that he had only received credit for $60,000 of sales." Affiant testifies that this statement entered in BATF agent Raymond Rowley's search warrant is also false, misleading and manufactured.

**AFFIDAVIT IN SUPPORT OF PLAINTIFFS REQUESTS FOR INJUNCTIVE RELIEF    PAGE 1**

4.     Affiant has written both the FBI and BATF concerning his firearm rights since receiving his full pardon from Governor Edwin Edwards, which included the restoration of his firearms rights. Representatives of these government agencies advised the affiant that his governor's pardon would not change his federal disabilities status, nor would other arguments contained in affiant's original petition ie: §921(a)(20)(A). In fact, one BATF agent told affiant that he would never get his rights restored under federal law.

5.     Affiant testifies that he tried to terminate his court appointed attorney, but the court refused the affiant the right to terminate attorney Weavers to hire Robert Ricks. Affiant has a right to terminate and hire new counsel by law. The court advised the Plaintiff that you can hire Ricks to assist Weavers but the court would not allow the affiant to terminate Weavers, this was again a violation of affiant's Constitutional rights.

6.     Affiant makes this sworn statement without inducements or threats of any kind whatsoever and does so under the penalty of perjury.

FURTHER AFFIANT SAYETH NOT.

_____
Eric Drake

Subscribed and sworn to me on the 9th day of October, 2012, to certify which, witness my hand and seal of office.



_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

My Commission Expires: _4-16-2015_____

**AFFIDAVIT IN SUPPORT OF PLAINTIFFS REQUESTS FOR INJUNCTIVE RELIEF          PAGE 2**

# Exhibit "A"

## Robert H. Porter False Sworn Statement

## WITNESS STATEMENT

Date: _6/7/90_

CITY OF _NORFOLK_

COUNTY OF _____ :SS

STATE OF _VA._

I, _Robert H. Porter III_, herein state that I am _42_ years of age; currently reside at _1003 Colley Ave. #5, Norfolk, VA. 23507_; and am employed by _The Vault 125 St. Paul's Blvd. Norfolk, VA. 23510_

On this date, Special Agent (s) _Glenn Garris_ and _____ of the U.S. Secret Service interviewed me. This interview concerned _Mark Fuller_. The information provided in this statement is to let the facts be known as to what took place.

ON OR ABOUT 5/14/90, AN INDIVIDUAL RENTED A SAFE DEPOSIT LOCKER AT "THE VAULT". HE IDENTIFIED HIMSELF AS AN "FBI AGENT" AND SHOWED ME IDENTIFICATION IN THE NAME OF MARK FULLER WHICH APPEARED TO BE GENUINE AND IDENTIFIED HIM AS AN FBI AGENT. THE IDENTIFICATION WAS LAMINATED AND HAD A PICTURE OF THE INDIVIDUAL WHO IDENTIFIED HIMSELF AS MARK FULLER ON IT. THE IDENTIFICATION HAD A GREEN BACKGROUND AND "F.B.I." ON IT.

SA GARRIS HAS SHOWN ME AN ARRAY OF SIX (6) PHOTOGRAPHS AND I HAVE IDENTIFIED THE INDIVIDUAL WHO IDENTIFIED HIMSELF TO ME AS FBI AGENT MARK FULLER.

THIS INDIVIDUAL KNOWN TO ME AS FBI AGENT MARK FULLER WAS ARMED WITH A PISTOL ON HIS BELT UNDER HIS JACKET.

This information is given by me to let the facts be known, and it is true to the best of my knowledge. I have not been forced into providing this information nor have I been promised anything in relation to this investigation. I have sworn to the above information as being true and correct before Agent(s) _G. Garris_ and _____ on this date, _6/7/90_.

_Robert H. Porter_ _6/7/90_
/s/ | Name                     Date

Sworn to and subscribed before me on this _7_ day of _June_, 19 _90_

_/s/_
/s/ Special Agent, U.S. Secret Service

Witness: _____
/s/          Name

Authority to Administer Oaths: 5 USC 303

# Exhibit "B"

Copy of Plaintiff's Pardon from Governor Edwards

  

# State of Louisiana

## Executive Department

*To* WHOM IT MAY CONCERN:

*Whereas, At a session of the Honorable the* United States District Court, Eastern District of Virginia,

*Held on the* 17th *day of* October, 1990

ERIC VON DRAKE *was tried and*

*convicted of the crime of* Criminal Information (Producing False ID Cards)

*and for said offense was sentenced by His Honor, the Judge of said court, to* one hundred forty one (141) days in custody of the United States Bureau of Prisons and upon release to twenty four (24) months supervised probation.

*And, Whereas, upon the recommendation of the Honorable Board of Pardons, I have thought proper to grant* a restoration of full rights of citizenship, including the right to own, possess, receive, ship and transport firearms, and remission of all forfeitures resulting from such conviction, to Eric Von Drake.

*Now, Therefore, I,* EDWIN EDWARDS *, Governor of the State of Louisiana, by virtue of the powers vested in me by the Constitution, do hereby grant a* restoration of full rights of citizenship, including the right to own, possess, receive, ship and transport firearms, and remission of all forfeitures resulting from such conviction, to Eric Von Drake,

*and do hereby direct you to act accordingly,*

*and for so doing this shall be your sufficient warrant and authority.*

*Given under my signature and the Great Seal of the State of Louisiana, at the City of Baton Rouge, this* twenty-seventh *day of* September *, A. D., 19* 95

*Governor.*

*By The Governor:*

*Secretary of State.*

# Exhibit "C"

Copy of Letter from Judge Robert Doumar

opposing Governor Edwards pardoning Plaintiff

# United States District Court

Eastern District of Virginia
Norfolk, Virginia 23510

Chambers of
Robert G. Doumar
District Judge

Walter E. Hoffman U.S. Courthouse
600 Granby Street, Room 183
FTS 827-3742
(804) 625-7138

December 17, 1993

Department of Public Safety and Corrections
Division of Probation and Parole
2525 Youree Drive, Suite 300
Shreveport, LA  71104-3600

ATTENTION:   Mr. Emmett G. Wyche, Jr.,
             District Administrator 3
             and Mr. Bill Swygart,
             Probation and Parole Agent/Adult

             Re:  Rogers, David Wayne, b/m
                  A/K/A:  Drake, Eric Von
                  Date of Birth: 7/14/54
                  Docket No. CR-90-80-N

Dear Mr. Wyche and Mr. Swygart:

     In connection with the request of Mr. Rogers, a/k/a Mr. Drake,
concerning the restoration of his rights to possess firearms, I
would be opposed to this, especially in view of the fact that he
has had as many as nineteen weapons in his possession at any one
time. Many of these weapons were assault weapons.  I fear that this
contains a possibility of future problems were this gentleman's
right to possess firearms regranted to him.  I would hope that the
Governor of Louisiana would not restore such rights.

     I felt that this gentleman needed some psychiatric counseling
and I do not know whether this counseling has cured his problems or
not.  In any event, without a great deal more information, I would
be opposed to the restoration of his right to possess firearms.

                              Yours truly,

                              Robert G. Doumar

RGD/ces
cc: Mr. Mark A. Exley
    Assistant U.S. Attorney

    Clerk, U.S. District Court

# Exhibit "D"

Copy of Letter from U.S. attorney's office

opposing Governor Edwards pardoning Plaintiff



**U.S. Department of Justice**



*United States Attorney*
*Eastern District of Virginia*

---

### Financial Litigation Unit

6500 World Trade Center
101 West Main St.
Norfolk, Virginia 23510

804/441-6331
804/441-3179
FAX 804/441-6689

November 2, 1993

The Honorable Robert G. Doumar
Judge, United States District Court
Walter E. Hoffman U.S. Court House
600 Granby Street
Norfolk, VA 23510

RE: United States v. David Wayne Rogers
    Crim. No. 90-80-N

Dear Judge Doumar:

    We received the enclosed letter, which asks that we contact you and obtain your opinion on the petition for restoration of civil rights for the defendant.

    We have written to Louisana and expressed our opposition. We have also forwarded the letter to former AUSA Oliver Norrell, who will respond likewise.

    Please let me know if I can be of any assistance.

Respectfully yours,

HELEN F. FAHEY
UNITED STATES ATTORNEY

by: _____
Mark A. Exley
Assistant United States Attorney

# Exhibit "E"

Copy of Letter from Plaintiffs probation officer

910073-N



# DEPARTMENT OF
# PUBLIC SAFETY AND CORRECTIONS

EDWIN W. EDWARDS, GOVERNOR

RICHARD L. STALDER, SECRETARY

October 27, 1993

Mr. Oliver Norrell, Esquire
Walter E. Hoffman U. S. Courthouse
600 Granby Street, Room 401
Norfolk, VA. 23510

RE: ROGERS, David Wayne, b/m
AKA: DRAKE, Eric Von
DOB: 7-14-54
DOCKET # CR-90-80-N

Dear Mr. Norrell:

Our office is attempting to complete a Clemency Investigation on the above named individual. He has applied through this office for restoration of his Louisiana rights with firearms privileges. The Federal Probation Office records in Shreveport, Louisiana, indicates that on 10-17-90, Rogers appeared in the Eastern District of Virginia, United States District Court and pled guilty to Criminal Information (Producing False Identification Cards). It was the sentence of the court that he be imprisoned with the United States Bureau of Prisons for a term of 141 days, credit for time served, and released on supervised probation for a term of 24 months. Special conditions of the subject's probation were that he not possess a firearm or destructive device and he was to submit to and bear the cost of psychological counseling and or treatment as directed by the probation office during the period of supervised release. He was also instructed to pay a fine of $2,570.00.

Records of the United States Probation Office in Shreveport, Louisiana, indicates that the subject's case satisfactorily expired on 10-16-92. He complied with both the standard and special conditions of probation, including his fine payment. Subject reported regularly to his officer and no other problems were noted.

Please provide this office with your opinion concerning the subject's granting of a pardon in the state of Louisiana concerning this charge.

We would also respectfully request from you that you contact the Honorable Robert G. Doumar, the sentencing judge in this case and obtain his opinion also; we do not have an address for Judge Doumar.

Mr. Oliver Norrell, Esquire
RE: ROGERS, David W., b/m
Page 2


Should further information be needed concerning completion of this
investigation, please do not hesitate to contact this agent at 318-676-7040
on a Wednesday or Friday between the hours of 7:00 a.m. and 3:30 p.m.

Your prompt assistance in this matter is greatly appreciated.

Sincerely,


Emmett G. Wyche, Jr.
District Administrator 3


Bill Swygart
Probation & Parole Agent/Adult
Shreveport District

BS:ls
D&T: 10-27-93
cc: File

# Exhibit "F"

Copy of BATF agent's Rowley search warrant

that contained untrue statements of fact

AO 93 (Rev. 5/85)   Search Warrant

# United States District Court

**EASTERN** _____ DISTRICT OF **VIRGINIA**

**Norfolk Division**

In the Matter of the Search of

(Name, address or brief description of person or property to be searched)

1 Undeveloped Roll of Photographic Film
17 Frames of Photographic Negatives
6 Micro Cassette Tapes

## SEARCH WARRANT

CASE NUMBER: Mag. 90-54-M

TO: _____ **RAYMOND G. ROWLEY** _____ and any Authorized Officer of the United States

Affidavit(s) having been made before me by _____ **RAYMOND G. ROWLEY** _____ who has reason to
                                                                    Affiant

believe that ☐ on the person of or ☐ on the premises known as (name, description and/or location)
**on the items of an undeveloped role of photographic film, 17 frames of
photographic negatives and six micro cassette tapes, located in the
offices of the United States Secret Service, Room 400, 200 Granby
Street, Norfolk, Virginia**

in the _____ **Eastern** _____ District of _____ **Virginia** _____ there is now
concealed a certain person or property, namely (describe the person or property)

**photographs, negative imprints and/or voices**

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person
or property so described is now concealed on the person or premises above-described and establish grounds for
the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before _____ **June 5, 1990** _____
                                                                                        Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant
and making the search (in the daytime — 6:00 A.M. to 10:00 P.M.) (at any time in the day or night as I find
reasonable cause has been established) and if the person or property be found there to seize same, leaving a copy
of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or prop-
erty seized and promptly return this warrant to _____ **Tommy E. Miller** _____
as required by law.                                                                        U.S. Judge or Magistrate

June 1, 1990 _at 12° pm_ ___ at _____ **Norfolk, Virginia**
Date and Time Issued                                                                City and State

**Tommy E. Miller** _____                    _____
Name and Title of Judicial Officer                    Signature of Judicial Officer

## AFFIDAVIT FOR SEARCH WARRANT

**FILED**

**United States District Court**

| | |
|---|---|
| **United States of America** | **DISTRICT** JUN - 1 1990 |
| vs. | Eastern District of Virginia |
| | CLERK, U.S. DISTRICT COURT NORFOLK, VA. |
| David Wayne Rogers, a/k/a "Eric Von Drake" a/k/a "Eric Von Rogers" | **DOCKET NO.** No. 90-53-m |
| | **NAME AND ADDRESS OF JUDGE[1] OR U.S. MAGISTRATE** Tommy Miller Magistrate Walter E. Hoffman U.S. Courthouse Bldg 600 Granby Street Norfolk, Virginia 23510 |

The undersigned being duly sworn deposes and says: That there is reason to believe that

| | |
|---|---|
| ☐ on the person of  ☒ on the premises known as | **DISTRICT** Eastern District of Virginia |

309 "E" Oaklake Way, Chesapeake, Virginia, which is located in the Great Bridge area of Chesapeake, Virginia. It is an upstairs apartment(on the left)of Building 309 (the numbers which are on the building). The letter"E" is on the door of the apartment.

The following property (or person) is concealed:

firearms; records of firearm transactions; ammunition, firearm accessories;; firearm paraphenalia; identification documents of David Wayne Rogers; Eric Von Drake and Eric Von Rogers or any other male person; any identification document or form that appears to be of an official nature which can be used to make or assist in making an identification dociment; any document-making implement; any financial records concerning firearm transactions

_____ the following grounds for search and seizure[2]

See attached affidavit which is incorporated as part of this affidavit for search warrant

_____ the following facts establishing the foregoing grounds for issuance of a Search Warrant.

(See attached affidavit which is incorporated as part of this affivit for a search warrant)

| | |
|---|---|
| **SIGNATURE OF AFFIANT** | **OFFICIAL TITLE, IF ANY** SPECIAL AGENT - BUREAU OF ATF |

Sworn to before me, and subscribed in my presence:

| | |
|---|---|
| **DATE** May 31, 1990 | **JUDGE[1] OR US MAGISTRATE** Tommy E. Miller |

[1]United States Judge or Judge of a State Court of Record.
[2]If a search is to be authorized "at any time in the day or night" pursuant to Federal Rules of Criminal Procedure 41(c), show reasonable cause therefor.

Agent Raymond G. Rowley, with the Bureau of Alcohol, Tobacco,
I have been employed by this agency for approximately 3½ years.
informed of the following by other U.S. law enforcement agents:
1990, David Wayne Rogers, a/k/a Eric Von Drake, a/k/a Eric Von
s arrested by the United States Secret Service for violation of
, United States Code, Section 408(g)(2). Upon receiving the consent
ogers, as search was conducted of the vehicle which mr. rogers identi-
his. As a result of the above, I have been informed by special
of the United States Secret Service and of the Internal Revenue
ce of the following:
rch of the vehicle, a 1990 Toyata truck, revealed a Remington Wingmaster
shotgun and a 9mm Sigsauer pistol. Also revealed was a set of photograph
atives which depicted 17 firearms, including what appeared to be
ssault-type weapons. Also depicted was ammunition.

Upon questioning, and after being advised of his constitutional rights
concerning making a statemnt, Mr. Rogers advised that he is not a
licensed firearm dealer, manufacturer or importer. However he indicated
that he was a firearm collector.

Also located in the truck was a bill of sale for a .357 Smith & Wesson
revolver, Model 686, serial number BAU 0672, for the sum of $350.71 from
David Rogers to Gary Weber, dated February 22, 1990(Attachment #1). Also
located in the truck was a sheet of paper which lists what appears to be
numerous firearms and accessories with what appears to be dollar values
next to them(Attachment #2). Also located in the truck were several micro-
cassette tapes, a portion of which had a recording of a voice which
appears to be that of David Wayne Rogers, whichstates that he had sold
approximately $106,853 in weapons, however that he had only received
credit for $60,000 of sales.

In addition to the above, pocket-sized notebook paper was located in
an ankle holster money belt which listed what appears to be firearm makes
and serial numbers. Along with this list was money in excess of $23,000.
(Attachment #3)

At the time of his arrest, Mr. Rogers was searched as was his Toyota truck.
Recovered from this search were several identification cards, some of which
are as follows:(Attachment#4)

(1)an Indiana Drivers License issued to Eric Von Drake, on May 8, 1990,
with an address of 7629 Cambridge #201, Indianapolis, IN 46219.

(2) a Texas Department of Public Safety driver's license in the name of
David Von Drake with an address of 7525 Holly Hill 35, Dallas,TX 75231.

(3)a United States Intelligence Agency identification card which identifies
David Rogers as a Senior Investigator with the Pentagon Secret Service which
bears the seal of the U.S. Central Intelligence Agency sans writing around
the seal.

(4) a United States International Intelligence Agency identification card
which identifies David Rogers as a Senior Investigator which bears the seal
of the U.S. Central Intelligence Agency sans writing.



on questioning by me, Mr. Rogers stated that he had manufactured the entification cards from the United States Intelligence Agencies himself nd that he had just put them together as a joke. The two identification ards in question were on the face very authentic-looking with a picture f Mr. Rogers laminated to each and appear to be professionally made and fficial.

On the application form which is the subject of the charge for which Mr. Rogers is charged and arrested, he lists his employment as a designer/ illustrator.(Attachment  #5)

I have been informed by a Chesapeake police officer that on May 31, 1990, in response to a missing person report filed on May 30, 1990, by a Gerrell Rogers of 309 "E" Oaklake Way, Chesapeake, Virginia, Officer Rafael Torres, III, of the Chesapeake Police Department and Lt. James Dunlo of the Chesapeake Sheriffs Department responded to the above address and spoke with Ms. Rogers who identified the missing person as her husband, David Wayne Rogers.  Upon a request to look through the apartment, and after receiving consent, from Ms. Rogers,the officers observed 9 suitcases. With Ms. Rogers' specific consent, the officers opened 5 of the suitcases which revealed approximately 10 firearms, some of these firearms being assault-type weapons.  These weapons were either loaded with ammunition or had along with them ammunition clips which were loaded with ammunition. Also in the apartment were 2 padlocked chests.  When asked what was in these chests, Ms. Rogers indicataed that they had firearms in them as well.  Ms. Rogers further stated that her husband is an artist but before that he was a gun dealer in Texas.

A check by my office with the Bureau of Alcohol, Tobacco and Firearms,Firearms & Explosives Licensing Section in Atlanta, revealed that neither David Wayne Rogers nor Eric Von Drake is a licensed firearm dealer.

In reference to the search of the Toyota truck, the two firearms located in the truck were loaded  at the time of their discovery.  Also located  int the truck were 2 additional magazines which did not fit the recovered weapons, these magazines being load with ammunition as well.  In the vehicle was a serrated-edged knife, a straight-razor knife which when folded does not appear to be a weapon, a police scanner and two pair of handcuffs.

I REQUEST SERVICE OF THE SEARCH WARRANT AT ANY TIME (DAY OR NIGHT) DUE TO THE FOLLOWING REASONS:

1) MRS. ROGERS WAS OBSERVED HANDLING A FIREARM IN AN UNSAFE MANNER AND I FEEL THAT THE FIREARMS POSE A POTENTIAL DANGER TO THE COMMUNITY AND HERSELF

2) MRS. ROGERS IS PRESENTLY ALLOWING LAW ENFORCEMENT OFFICERS IN HER HOME AND IS BELIEVED AWAITING SERVICE OF THE WARRANT.

3) POSSIBILITY OF REMOVAL OF EVIDENCE. RR

FILED

JUN - 1 1990

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

06 (Rev. 5/85)  Affidavit for Search Warrant  ⊕

# United States District Court

**EASTERN** ___ DISTRICT OF ___ **VIRGINIA**
Norfolk Division

In the Matter of the Search of

(Name, address or brief description of person or property to be searched)

1 Undeveloped Roll of Photographic Film
17 frames of photographic negatives
6 micro cassette tapes

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER: Mag. 90-54-M

I ___ RAYMOND G. ROWLEY ___ being duly sworn depose and say:

I am a(n) S/A, Bureau of Alcohol, Tobacco & Firearms ___ and have reason to believe
                                    Official Title

that ⊠ on the person of or ⊠ on the premises known as (name, description and/or location)

on the items of an undeveloped role of photographic film, 17 frames of
photographic negatives and six micro cassette tapes, located in the
offices of the United States Secret Service, Room 400, 200 Granby Street,
Norfolk, Virginia

in the ___ **Eastern** ___ District of ___ **Virginia** ___
there is now concealed a certain person or property, namely (describe the person or property)

photographs, negative imprints, and/or voices

which is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)
property that constitutes evidence of the commission of a criminal offense
or property designed or intended for use or which is or has been used
in violation of Title as the means of committing a criminal offense. 922(a)(1)(A)
                        ___ United States Code, Section(s) ___
The facts to support the issuance of a Search Warrant are as follows:

(See attached affidavit)

Continued on the attached sheet and made a part hereof.
⊠ Yes  ☐ No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

June 1, 1990 ___ at ___ **Norfolk, Virginia**
te                                  City and State

**Tommy E. Miller, U.S. Magistrate**
me and Title of Judicial Officer

_____
Signature of Judicial Officer

# Exhibit "G"

Copy of petition of protest of living conditions

while the Plaintiff was incarcerated

~~VIOLATION OF LIVING QUARTERS~~
~~3K BLOCK~~

Although none of the inmates here to my knowledge are certified doctors, it is very plain or easy to see that conditions in our cell block are below health standards.

The floors has no kind of tile on them and they are very dirty. The shower stall is also very dirty and we are not given proper cleaners to sanitized this area. This is an area that over **16** men use day in and day out. No tile on the shower floor and it's just dirty. (mold on the walls).

The walls of the cell's also are. _very_ dirty, which they need to be cleaned + painted, the vents are dirty, and I am sure they haven't been clean (or filter cleaned for some time). The air condition vents seems to blow out fine elements of some kind, Toilet Paper we have to _BEGG_ _FOR_ AND AFTER two or three days the guards will put 3-4 Rolls in for over ~~twenty~~ SIXTEEN men. Although our in mate hand book states that we should have something to sanitized our cell with, we just don't get it.

Thereby all inmates who names bear below feels that OUR living quarters are a Health Hazard, and thereof agree with the statements above and has Read and verified the information in this statement to be true and correct.

Erica Von Drake
UM Runnel
L. R. Carruthers
[signature]
Ed [signature]
Eric Brown
[signature]
Gene [signature]
Michael [signature] Moran
James A. Hayes J.
[signature]

Meli R. E[signature]
Body Ward
William Eston
Gray Wentto
Isaac Richardson
Mickey Dee.
James Harris
anthony Passmore